Alison Pennington (CA SBN 231861)
  alison@ild.org
Claudia Valenzuela* (IL SBN 6279472)
  claudia@ild.org
Manoj Govindaiah* (IL SBN 6289604)
  manoj@ild.org
Jessica Zhang* (TX SBN 24127437)
  jessica@ild.org
IMMIGRANT LEGAL DEFENSE
1322 Webster St., Ste. 300
Oakland, CA 94612
Telephone: (510) 467-0655
Facsimile: (510) 890-3103
*Attorneys for Plaintiffs (continued on following page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL BAIL FUND NETWORK, | ) |
| | ) |
| NORCAL RESIST, | ) |
| | ) |
| REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, | ) ) ) |
| | ) |
| PRAIRIELANDS FREEDOM FUND, | ) |
| | ) |
|         and | ) |
| | ) |
| AMERICAN IMMIGRATION COUNCIL, | ) |
| | ) |
|             Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) |
| | ) |
|         and | ) |
| | ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | ) ) |
| | ) |
|             Defendants. | ) |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

No. _____

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Emily Creighton* (DC SBN 1009922)
  ecreighton@immcouncil.org
Raul Pinto* (NC SBN 42310)
  rpinto@immcouncil.org
AMERICAN IMMIGRATION COUNCIL
1331 G St. NW, Ste. 200
Washington, DC 20005
Telephone: (202) 507-7514


Tamara Goodlette* (TX SBN 24117561)
  tami.goodlette@raicestexas.org
Yvette Changuin* (TX SBN 24085246)
  yvette.changuin@raicestexas.org
Vanessa Rivas-Bernardy (CA SBN 341464)
  vanessa.rivas@raicestexas.org
REFUGEE AND IMMIGRANT CENTER
FOR EDUCATION AND LEGAL SERVICES
5121 Crestway Drive, Ste. 105
San Antonio, TX 78239
Telephone: (210) 960-3206


Nikhel Sus* (DC SBN 1017937)
  nsus@citizensforethics.org
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
1331 F St. NW, Ste. 900
Washington, DC 20004
Telephone: (202) 408-5565

*Attorneys for the Plaintiffs*

* *Pro hac vice* application forthcoming

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1       1.     This action under the Freedom of Information Act (FOIA) challenges U.S.

Immigration and Customs Enforcement's (ICE) failure to proactively disclose immigration bond

policies – including policies and interpretations adopted by the agency, and manuals and

instructions relating to the posting, revocation, cancellation, and refunding of immigration bonds

– in violation of FOIA's proactive disclosure provision, 5 U.S.C. § 552(a)(2).

       2.     ICE, a component of the Department of Homeland Security (DHS), is the federal

agency tasked with the apprehension, detention, and release of noncitizens who are facing

deportation proceedings in the United States. Plaintiffs are nonprofit organizations that inform

the public about immigration policies and procedures and work with members of the public to

pay bonds and secure the release of eligible noncitizens from ICE custody. Securing the release

of a noncitizen from immigration custody is an important step for a noncitizen to access legal

counsel and to defend successfully against removal. Release from detention also ensures that a

noncitizen will be reunited with family members and their community in the United States while

their deportation proceedings are ongoing.

       3.     ICE's failure to proactively post its bond policies, interpretations, and instructions

as required by statute impedes Plaintiffs' and the public's access to crucial information needed to

deal effectively and knowledgably with ICE and to timely and efficiently secure the liberty of

noncitizens eligible for release during their deportation proceedings.

       4.     Accordingly, Plaintiffs respectfully request that the Court declare Defendants in

violation of FOIA, order ICE to make its operative bond policies publicly available on an

ongoing basis in an electronic format by posting them on ICE's website, and grant any other

appropriate relief authorized by law.

## JURISDICTION AND VENUE

       5.     This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF       1

6.      Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff National Bail Fund Network's principal place of business is within this District.

## PARTIES

7.      Plaintiff National Bail Fund Network (NBFN) is a national project hosted by Community Justice Exchange, a nonprofit organization based in San Francisco, California. NBFN works with organizers, advocates, and legal providers across the country who are using, or contemplating using, community bail funds as part of efforts to radically change local bail systems and reduce incarceration. NBFN was established in September 2016 and is comprised of more than 90 community bail funds.

8.      Plaintiff NorCal Resist is a nonprofit organization based in Sacramento, California that organizes and serves communities in northern California. NorCal Resist has a bond fund that helps northern California families reunite with their loved ones, including by paying bonds for individuals detained in ICE custody in northern California.

9.      Plaintiff Refugee and Immigrant Center for Education and Legal Services (RAICES) is a nonprofit organization based in San Antonio, Texas that provides free and low-cost services to noncitizens through the provision of robust legal services, social programs, bond assistance, and advocacy work. RAICES has established one of the largest immigration bond funds in the nation. The bond fund assists individuals in immigration detention within the state of Texas and responds to daily requests from people in detention who need assistance paying their bonds.

10.     Plaintiff Prairielands Freedom Fund (PFF) is a nonprofit bond fund based in Iowa City, Iowa. PFF pays immigration bonds and pretrial bail to free people from detention. PFF prioritizes bond payment for people who live in Iowa or who are coming to live in Iowa, and also pays bonds for residents of other prairielands states, including Nebraska, Missouri, Wisconsin,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    2

Minnesota, Illinois, South Dakota, and North Dakota, who are otherwise unable to find bond assistance.

11.     Plaintiff American Immigration Council ("the Council") is a tax-exempt, not-for-profit educational and charitable organization. The Council works to increase public understanding of immigration law and policy, and to advocate for the fair and just administration of U.S. immigration laws, as well as to protect the legal rights of noncitizens. The Council also seeks to hold the government accountable for unlawful conduct, restrictive interpretations of the law, and for failing to ensure that the immigration laws are implemented and executed in a manner that comports with due process through the pursuit of transparency and impact litigation. The Council maintains a principal place of business in Washington, D.C.

12.     Defendant DHS is an agency of the United States government within the meaning of 5 U.S.C. § 552(f)(1).

13.     Defendant ICE is an agency of the United States government within the meaning of 5 U.S.C. § 552(f)(1) and a component of DHS.

14.     Defendants have possession of and control over the records Plaintiffs seek to have made publicly available under 5 U.S.C. § 552(a)(2).

## BACKGROUND

**Legal Framework**

15.     Section 552(a)(2) of FOIA, known as the "proactive disclosure" or "reading room" provision, "identifies certain categories of records the agency must make available on an ongoing basis, no request necessary." *Animal Legal Def. Fund v. USDA*, 935 F.3d 858, 862 (9th Cir. 2019). This "affirmative obligation," *id.*, applies to the following categories of records, among others:

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    3

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public; [and]

(D) copies of all records, regardless of form or format—
        (i) that have been released to any person under [§ 552(a)(3)]; and
        (ii)(I) that because of the nature of their subject matter, the agency
        determines have become or are likely to become the subject of subsequent
        requests for substantially the same records; or
        (II) that have been requested 3 or more times . . . .

5 U.S.C. § 552(a)(2)(B)–(D).

16.      FOIA vests in district courts "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). "This provision cloaks district courts with the authority to order an agency to post records in an online reading room," pursuant to FOIA's proactive disclosure provision. *Animal Legal Def. Fund*, 935 F.3d at 869.

**ICE Bond Policies and Procedures**

17.      Certain noncitizens detained in ICE custody are eligible for release upon payment of a bond. *See, e.g.*, 8 U.S.C. § 1226(a)(2)(A).

18.      When ICE detains a bond-eligible person, ICE may initially set a bond amount. 8 C.F.R. § 236.1(c)(8). The noncitizen may request a bond redetermination by an immigration judge if ICE refuses to set bond or the amount set is too high. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), (b).

19.      Once a bond is set, bond companies, entities, or individuals may serve as an "obligor" and can post the monetary bond on behalf of a noncitizen. 8 C.F.R. § 103.6(b)(1). The obligor is responsible for ensuring that the noncitizen presents themself upon ICE's request. *See* Procedures and Standards for Declining Surety Immigration Bonds and Administrative Appeal

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF      4

1  Requirement for Breaches, 83 Fed. Reg. 25951, 25952 (June 5, 2018); ICE Form I-352,

2  https://www.ice.gov/doclib/forms/i352.pdf. The bond is "cancelled" once a noncitizen complies

3  with the conditions of their release. *See* 8 C.F.R. § 103.6(c). The bond payment is then returned

4  to the obligor. *See* ICE Form I-352, https://www.ice.gov/doclib/forms/i352.pdf. If ICE

5  determines that there has been a "substantial violation" of the noncitizen's conditions of release,

6  ICE will find that the bond has been "breached." 8 C.F.R. § 103.6(e). In some circumstances,

7  ICE will revoke a bond before it is either cancelled or breached. 8 C.F.R. § 236.1(c)(9).

8          20.    Within this legal framework, the processes for posting bond, bond cancellation

9  and refund, bond revocation, and bond breach are governed by various written policies,

10  interpretations, and instructions. DHS has published some of these policies, interpretations, and

11  instructions in the Code of Federal Regulations. ICE has included those regulations, and some

12  additional instructions, in the select bond forms available on ICE's website. ICE also has posted

13  identical sets of instructions on each of the webpages for facilities where ICE accepts bonds.

14  Finally, ICE published a memorandum dated December 18, 2006, entitled "Bond Posting Hours

15  and Release Policies and Procedures," in its online FOIA reading room. It is unclear if this

16  memorandum is still controlling policy.

17          21.    Some of ICE's bond policies, interpretations, and instructions are contained in its

18  Enforcement and Removal Office (ERO) Bond Management Handbook (hereinafter the

19  "Handbook"). While ICE has received at least three FOIA requests for the Handbook and has

20  released an August 2014 version of the Handbook to at least one FOIA requester, it has not

21  published any version of the Handbook on its website.[1]

---

[1] The American Immigration Lawyers Association posted the August 2014 version of the
Handbook on its website after it obtained the document through a FOIA request. *See* ICE ERO,
*Bond Management Handbook* (Aug. 19, 2014), https://www.aila.org/File/Related/16051730f.pdf.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          5

22.     On information and belief, ICE has other written bond policies, interpretations, and instructions, but it does not proactively make them available to the public.

23.     In the experience of Plaintiffs NBFN, NorCal Resist, RAICES, and PFF (hereinafter "Bond Fund Plaintiffs"), ICE's practices relating to bond payments often diverge from the instructions in the Handbook.

24.     Bond Fund Plaintiffs frequently have been turned away or had their bond payments rejected because of policies, interpretations, and instructions that individual ICE offices or ICE officers invoke. These policies, interpretations, and instructions are not posted or available publicly, but, on information and belief, they are kept in written form. These local policies, interpretations, and instructions are often in conflict with policies, interpretations, and instructions that ICE has posted publicly or that are contained in the Handbook.

25.     Bond Fund Plaintiffs also have encountered inconsistent policies and practices among different ICE offices, as well as changes in longstanding policies and practices regarding bond payments without notice. ICE has not publicly posted clarification regarding inconsistent or changed policies, interpretations, and instructions that impact its practices at the local or national level.

26.     The lack of access to all of ICE's written policies, interpretations, and instructions for the posting, revocation, breach, and cancellation of bond creates confusion for those seeking to post bond, including Bond Fund Plaintiffs and those noncitizens who are released on bond. ICE's failure to post these records further harms detained individuals who are eligible to be released from detention but whose speedy release is hindered by a lack of transparency in policies, interpretations, and instructions by ICE.

Bond Payment and Release from Detention

27.    To determine ICE's operative policies, interpretations, and instructions for posting bond and securing the release of a loved one or community member from ICE custody, Plaintiffs and members of the public rely on a patchwork of information sources, some of which cannot be verified as accurate or current.

28.    It is unclear, for example, who can post a bond on behalf of an individual in ICE custody. In Bond Fund Plaintiffs' experience, ICE only allows adults who are U.S. citizens or lawful permanent residents to serve as bond obligors. This practice contradicts the Handbook, which states that lawfully admitted nonimmigrants, noncitizens released on an order of supervision, noncitizens in removal proceedings or with deferred action, and noncitizens with stays of removal may also post bond on behalf of detained noncitizens.

29.    In Bond Fund Plaintiffs' experience, this lack of transparency and inconsistency allows ICE to make bond determinations in an arbitrary and discriminatory manner.

30.    Plaintiff NorCal Resist has observed that only their Asian volunteers are required to provide proof of citizenship when they serve as obligors. In Plaintiff NBFN's experience, their volunteers who are people of color have been subjected to racial profiling by facing concerted questioning about their identification, yet white volunteers have not been subject to similar scrutiny when they post bond on Plaintiff NBFN's behalf. Plaintiff RAICES has observed ICE officers requiring the obligor to speak English to pay the bond.

31.    Another area of confusion for Bond Fund Plaintiffs and members of the public relates to the hours of operation for offices that accept bonds. To pay a bond, obligors must

1  physically appear at any of the eighty-two ICE ERO offices around the country that accept bond

2  payments, regardless of where ICE detains the individual.[2]

3       32.    The December 18, 2006, ICE memo established that offices accepting bond

4  payments will process payments between 9:00 AM and 3:00 PM local time.[3] However, in Bond

5  Fund Plaintiffs' experience, potential obligors frequently are turned away from posting bond

6  before 3:00 PM local time. Offices also stop accepting bonds at various points in the afternoon –

7  after 12:00 PM, 1:00 PM, or 2:00 PM, depending on the facility.

8       33.    Additionally, ICE ERO offices often require that bonds be processed by 3:00 PM

9  in the time zone in which the individual is detained. Thus, Plaintiff NBFN, which is located in

10  California, has encountered issues in attempting to post bond for an individual detained in a

11  detention facility located in the Eastern Time Zone.

12       34.    On information and belief, individual ICE ERO offices have written policies,

13  interpretations, and instructions that establish the hours of operation during which they will

14  process payments, but they fail to proactively disclose those policies, interpretations, and

15  instructions.

16       35.    Further, other ICE practices regarding bond are confusing because they conflict

17  with binding regulations and the Handbook. On information and belief, these practices stem from

18  nonpublic written policies, interpretations, and instructions that diverge from those that ICE

19  makes publicly available.

---

20

21  [2] *See ICE ERO Bond Acceptance Facilities*, https://www.ice.gov/detain/ice-ero-bond-acceptance-
    facilities.
22  [3] Memorandum from John P. Torres, Dir. of ICE, to Asst. Dirs., Deputy Asst. Dirs, Field Office
    Dirs., and Deputy Field Office Dirs., Bond Posting Hours and Release Policies and Procedures
23  (Dec. 18, 2006),
    https://www.ice.gov/doclib/foia/dro_policy_memos/bondpostinghoursandreleasepoliciesandproc
24  edures12182006.pdf.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          8

36.     For example, regulations state that ICE will accept bond payments in the form of cash or cash equivalents, such as postal money orders, certified checks, or cashier's checks. *See* 8 C.F.R. § 103.6(b)(1). The Handbook states that ICE only will accept cash or money order for bonds under $10,000. Form I-352 states that ICE will accept only certified checks, cashier's checks, and money orders, but not cash. *See* ICE Form I-352, https://www.ice.gov/doclib/forms/i352.pdf; *see also* Agency Information Collection Activities; Revision of a Currently Approved Collection: Immigration Bond, 84 Fed. Reg. 44913, 44914 (Aug. 27, 2019).

37.     However, Plaintiff RAICES has filled out forms at certain ICE ERO offices that state cash is accepted only for bonds under $5,000. In the experience of Bond Fund Plaintiffs, ICE usually refuses to accept payment in cash or certified check, regardless of the bond amount. ICE has required Plaintiff NorCal, for example, to present a cashier's check or money order for bonds as low as $1,500 and $3,000. On information and belief, some ICE ERO offices have written policies and instructions under which they only will accept postal money orders and no other forms of payment. These policies, interpretations, and instructions are not publicly available.

38.     There is further public confusion as to how payment by check can be made. According to ICE's website and the Handbook, ICE will accept checks made out to "Immigration and Customs Enforcement" or "Department of Homeland Security."[4] However, Bond Fund Plaintiffs have attempted to post bonds at certain offices where ICE only will accept checks made out to "Department of Homeland Security." On information and belief, some ICE

---

[4] *See, e.g.*, *Mesa Verde ICE Processing Center*, https://www.ice.gov/detain/detention-facilities/mesa-verde-ice-processing-facility.

1    ERO offices have written policies and instructions that require checks be made out to specific

2    names that differ from published materials and the Handbook. These policies, interpretations,

3    and instructions are not publicly available.

4          39.    Plaintiff RAICES also has observed employees for an ICE contractor, The GEO

5    Group, Inc., accepting and processing bond payments at some ICE ERO offices. In Plaintiff

6    RAICES's experience, GEO Group employees are less familiar with the bond process than ICE

7    officers, who are employed directly by the agency.

8          40.    On information and belief, some ICE ERO offices also have adopted additional

9    written policies, interpretations, and instructions for proof of identification that are not found in

10   the Handbook. For example, some ICE ERO offices have required obligors associated with

11   Plaintiff NBFN to present additional information, like obligors' social security number or

12   detained individuals' port of entry and date of entry. These additional and arbitrary nonpublic

13   policies create a chilling effect: Bond Fund Plaintiffs have avoided ICE ERO offices that require

14   such additional information and Bond Fund Plaintiffs have worked with individuals who were

15   considering, but ultimately declined to be obligors because of uncertainty around what additional

16   identification they would be required to show. When Plaintiff NBFN requested a copy of these

17   written policies, interpretations, and instructions, ICE refused, even when ICE has stated to

18   Plaintiff NBFN's volunteers that a written policy, interpretation, and instruction exists.

19         41.    ICE agents also have stopped Plaintiff NorCal Resist's volunteers when they

20   attempt to post bond, placed them in a separate room, and interrogated them about the bond fund

21   they work for, the bond fund's mission, and what happens to individuals for whom the bond fund

22   posts bond.

23         42.    Various ICE ERO offices require Bond Fund Plaintiffs and other members of the

24   public to present government-issued identification for the detained noncitizen, in addition to that

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                          10

of the obligor, even when it was not ordered as a condition of release by the immigration judge or by the designated ICE officer. Often, the detained individual's identification is in ICE's possession, so the obligor is unable to present it. Even when a detained individual's identification is presented, ICE may refuse to accept the identification or delay the bond posting by weeks while the identification is verified. Bond Fund Plaintiffs most frequently see this happen when the detained individuals are African nationals.

43.     Bond Fund Plaintiffs and members of the public also have encountered inconsistent or unclear policies, interpretations, and instructions regarding additional information ICE ERO offices require to release an individual once bond is posted.

44.     For example, various ICE ERO offices reject bond payments unless the obligor presents a bus or plane ticket for the detained individual or the name of the person who will pick up the detained individual. Because it is often unclear when and where ICE will release the detained individual, family members do not or cannot always purchase tickets in advance. Even when obligors can secure travel arrangements in advance, they often do not know to bring a bus or plane ticket with them to post bond because they do not know that the ICE ERO office implemented this policy, interpretation, or instruction. ICE's lack of information on policies, interpretations, and instructions regarding release once bond is posted thus can delay the detained individual's release from detention.

45.     On information and belief, ICE has rejected bond payment for reasons such as that the detained individual's home address is not in the U.S. Postal Service online system or the obligor's identity documents appear fraudulent. ICE also has told Plaintiff RAICES, for example, that a bond payment "fell out of the queue," and refused to accept payment, regardless of time of day. ICE refused to explain what "fell out of the queue" meant. In some cases, ICE has

1    rejected Bond Fund Plaintiffs' attempted bond payments for reasons that ICE refused to name or

2    explain.

3        46.    ICE has not publicly posted any of its written policies, interpretations, or

4    instructions regarding how it determines whether to reject a bond payment or how an individual

5    may challenge ICE's determination to reject a bond payment.

6        47.    On information and belief, ICE rejects some bonds erroneously. For example,

7    Plaintiff NBFN volunteers have attempted to post bond after ICE sets a bond, but ICE does not

8    accept the bond payment from the volunteer because ICE cannot find the bond in its system. On

9    information and belief, ICE has written policies, interpretations, and instructions that govern the

10   documentation and notification to ICE ERO offices about newly set bonds that the agency has

11   not posted publicly. The public posting of these written policies, interpretations, and instructions

12   are essential in ensuring that obligors can successfully post timely bonds and avoid delays in the

13   release of individuals who have been granted bond.

14       48.    When ICE does release an individual, the lack of publicly available policies,

15   interpretations, and instructions governing release can create further confusion and stress.

16       49.    The Handbook states that ICE must release detained noncitizens from custody "in

17   a timely manner in a location that is safe and where public transportation is available." However,

18   on information and belief, individual ICE ERO offices' written policies, interpretations, and

19   instructions diverge from the Handbook regarding release location and timing. These individual

20   offices' written policies, interpretations, and instructions are not posted publicly.

21       50.    In Bond Fund Plaintiffs' experience, different ICE ERO offices have dropped off

22   released individuals on the side of the road, in the middle of the night, or after long delays that

23   have led to individuals missing their buses and planes. These release practices contradict ICE's

24

1  policy as set forth in the Handbook. Plaintiffs and the public cannot understand the apparent

2  contradiction without access to ICE's other written policies, interpretations, or instructions.

3  Bond Cancellation and Refund

4      51.    ICE also fails to fully proactively disclose its written policies, interpretations, and

5  instructions regarding how an obligor can obtain a refund once the noncitizen fulfills all their

6  immigration conditions and the bond is "cancelled."

7      52.    The conditions of the bond are met and the bond is cancelled when the noncitizen

8  has not breached their conditions of release and the bond is no longer necessary – for example, if

9  the noncitizen obtains legal status in the United States, their removal proceedings are terminated,

10  ICE takes the noncitizen back into custody, the bonded noncitizen is removed or voluntarily

11  departs, or the bonded noncitizen dies. *See* 8 C.F.R. § 103.6(c); ICE Form I-352,

12  https://www.ice.gov/doclib/forms/i352.pdf.

13      53.    Once the conditions of the bond are met, ICE sends a notice of cancellation to the

14  obligor and automatically begins the refund process. *See* ICE Form I-352,

15  https://www.ice.gov/doclib/forms/i352.pdf; *see also* Agency Information Collection Activities,

16  84 Fed. Reg. at 44914–15. ICE eventually sends the refund via check to the obligor.

17      54.    According to the Handbook, bond refunds are handled by DHS's Debt

18  Management Center (DMC) in Vermont. On information and belief, DHS has written policies,

19  interpretations, and instructions governing the processing of bond returns by the DMC. These

20  policies, interpretations, and instructions are not posted publicly.

21      55.    Bond Fund Plaintiffs and members of the public have encountered inconsistencies

22  in how ICE determines whether a bond is cancelled. For example, ICE did not cancel bonds in

23  certain removal cases that were dismissed or when relief was granted until after Plaintiff

24  RAICES reached out to inquire.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          13

56.     Bond Fund Plaintiffs have encountered a wide range in the time it takes for bonds to be cancelled, ranging from four weeks to around eight months after the conditions of bond have been satisfied. Without publicly available information about how the cancellation process occurs, or how long this process can or should take, obligors are left without an estimate of when they can expect to receive their refund and with no way of knowing if there is a problem with their refund.

57.     Bond Fund Plaintiffs also have been told by ICE officers that cases that have been administratively closed do not automatically lead to the bond being cancelled, and that each case is reviewed individually by a case officer. On information and belief, ICE has written policies, interpretations, and instructions that apply to cancellation determinations for administratively closed cases. ICE never has posted publicly the criteria it applies to such administratively closed cases to determine whether bond should be cancelled.

58.     After a bond is cancelled, Bond Fund Plaintiffs have also experienced a wide range in the amount of time it takes for the refund to be sent from the DMC in Vermont to the obligor. In some cases, Bond Fund Plaintiffs have to follow up repeatedly with the DMC by phone or email before DHS mails the refund check. Without publicly available information about how the DMC processes refund checks, obligors are left without an estimate of when they can expect to receive their refund and with no way of knowing if there is a problem with their refund.

Bond Breach and Revocation

59.     If an individual released on bond "substantial[ly] violat[es]" the conditions of release, the bond is breached. 8 C.F.R. § 103.6(e). ICE determines whether such a bond should be declared breached or cancelled. *Id.*

60.     Per the Handbook, when the conditions of release under bond have been breached, ICE gives the obligor notice and demands that the obligor present the noncitizen. If the

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          14

noncitizen does not appear, ICE will send the obligor a notice of breach and the obligor cannot receive a bond refund. The obligor may appeal the finding of a breach within 30 days with the U.S. Citizenship and Immigration Service's (USCIS) Administrative Appeals Office.[5]

61.     Additionally, a noncitizen released on bond may have their release revoked at any time at ICE's discretion, at which point, they may be taken into custody and detained. 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9). If a noncitizen's release is revoked and they are re-detained, any outstanding bond is revoked and cancelled, unless a breach has occurred. 8 C.F.R. § 236.1(c)(9).

62.     ICE has not posted policies, procedures, or interpretations of the factors it considers when deciding whether a bond is breached or to revoke a bond.

63.     This lack of clarity on both bond breach and bond revocation allows ICE to use terms such as "breach" and "revocation" arbitrarily.

**Plaintiffs' FOIA Request**

64.     On June 24, 2022, Plaintiffs and four other organizations that administer bond funds (hereinafter, "Requesters") submitted a FOIA request to ICE and DHS under 5 U.S.C. § 552(a)(2), requesting that ICE publish on its website the agency's policies, interpretations, and instructions relating to the immigration bond process. The FOIA request submitted by Requesters is attached as Exhibit A.

65.     Requesters asked that ICE publish "statements of policy and interpretation adopted by the agency" and "staff manuals and instructions to staff that affect a member of the public" relating to five categories of records: 1) procedures relating to the posting of bond and

---

[5] USCIS Form I-290B, Notice of Appeal or Motion,
https://www.uscis.gov/sites/default/files/document/forms/i-290b.pdf.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    15

1   subsequent release from detention; 2) information about how an individual eligible for bond may

2   challenge the agency's determination to revoke bond or that conditions of release have been

3   breached; 3) policies and procedures used by ICE officers to decide whether to reject, cancel, or

4   revoke bond determinations; 4) information about how a bond obligor may challenge the

5   agency's rejection of a bond payment or claim that conditions of release have been breached; and

6   5) the process and conditions by which an obligor can obtain a refund of paid bonds.

7           66.     The request also asked the agency to proactively disclose any ICE ERO Field

8   Office's local policies, interpretations, and instructions relating to the above-referenced

9   categories of records.

10          67.     Defendant DHS acknowledged receipt of Requesters' FOIA request via email on

11  June 24, 2022, and assigned the request reference number 2022-ICFO-21370. The

12  acknowledgment of receipt is attached as Exhibit B.

13          68.     On June 29, 2022, Defendant ICE sent an email to Requesters acknowledging

14  receipt of the FOIA request and invoking FOIA's ten-working-day extension to respond to the

15  request. This email is attached as Exhibit C.

16          69.     As of this date, Defendants have not published the information as requested by

17  Plaintiffs and have not responded to Plaintiffs' FOIA request.

18          70.     Defendants' failure to publish the requested records on ICE's website deprives the

19  Plaintiffs and the public of information desperately needed to ascertain ICE bond policies,

20  interpretations, and instructions and to successfully interact with the agency. It also creates

21  confusion and impairs bond funds' and the public's ability to assist individuals in detention and

22  secure their release. Most importantly, ICE's lack of transparency regarding written policies,

23  interpretations, and instructions has caused the unnecessary, prolonged, and possibly erroneous

24  incarceration of individuals in ICE custody.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    16

1

**FIRST CAUSE OF ACTION**
**(FOIA – Failure to Proactively Disclose Records under 5 U.S.C. §§ 552(a)(2)(B) & (C))**

2

71.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

3

4

72.     Records relating to ICE's bond policies, interpretations, and instructions

encompass both "statements of policy and interpretations which have been adopted by the

5

agency and are not published in the Federal Register" and "administrative staff manuals and

6

instructions to staff that affect a member of the public" within the meaning of 5 U.S.C.

7

§§ 552(a)(2)(B) and (C).

8

73.     Defendants have a statutory obligation under 5 U.S.C. § 552(a)(2) to proactively

9

make ICE's bond policies, interpretations, and instructions available for public inspection in an

10

electronic format on an ongoing basis.

11

74.     By failing to proactively disclose ICE's bond policies, interpretations, and

12

instructions in accordance with 5 U.S.C. § 552(a)(2), Defendants are in violation of their

13

obligations under FOIA.

14

75.     To the extent that administrative exhaustion is required, Plaintiffs have exhausted

15

their administrative remedies under FOIA.

16

**SECOND CAUSE OF ACTION**
**(FOIA – Failure to Proactively Disclose Records under 5 U.S.C. § 552(a)(2)(D))**

17

76.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

18

77.     Plaintiffs have requested that ICE post its policies, interpretations, and

19

instructions relating to bond procedures for public inspection.

20

78.     The records requested by Plaintiffs in their June 24, 2022 request include the

21

Handbook.

22

79.     The Handbook previously has been requested on at least three occasions, in

23

requests made under 5 U.S.C. § 552(a)(3) on June 3, 2015, July 30, 2015, and November 25,

24

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    17

1    2020. *See* Exhibits D–F. The Handbook was released in response to at least two of those

2    requests.

3           80.     Because the Handbook has "been released to any person under" 5 U.S.C.

4    § 552(a)(3), and has "been requested 3 or more times," Defendants have a statutory obligation

5    under 5 U.S.C. § 552(a)(2)(D) to proactively make the Handbook and any updates to it available

6    for public inspection in an electronic format on an ongoing basis.

7           81.     By failing to proactively disclose the Handbook and any updates to it in

8    accordance with 5 U.S.C. § 552(a)(2)(D), Defendants are in violation of their obligations under

9    FOIA.

10          82.     To the extent that administrative exhaustion is required, Plaintiffs have exhausted

11   their administrative remedies under FOIA.

12                                       **PRAYER FOR RELIEF**

13   WHEREFORE, Plaintiffs respectfully request that this Court:

14   (A)    Declare that Defendants' failure to proactively make publicly available in an electronic

15          format all records at issue is unlawful and in violation of FOIA;

16   (B)    Order Defendants to immediately make all records at issue publicly available on an

17          ongoing basis in an electronic format by posting them on ICE's website;

18   (C)    Enjoin Defendants from wrongfully withholding any of the records at issue or portions

19          thereof;

20   (D)    Retain jurisdiction to ensure ICE's compliance with the Court's orders;

21   (E)    Award Plaintiffs their costs, expenses, and reasonable attorneys' fees; and

22   (F)    Grant such other and further relief as this Court may deem just and proper.

23

24

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                              18

Dated: December 8, 2022                   Respectfully submitted,

                                          */s/ Alison Pennington*
                                          Alison Pennington
                                          Claudia Valenzuela*
                                          Manoj Govindaiah*
                                          Jessica Zhang*
                                          Immigrant Legal Defense
                                          1322 Webster St., Ste. 300
                                          Oakland, CA 94612
                                          *Pro Hac Vice Motion Forthcoming*

                                          Emily Creighton*
                                          Raul Pinto*
                                          American Immigration Council
                                          1331 G St. NW, Ste. 200
                                          Washington, DC 20005
                                          *Pro Hac Vice Motion Forthcoming*

                                          Tamara Goodlette*
                                          Yvette Changuin*
                                          Vanessa Rivas-Bernardy
                                          RAICES
                                          5121 Crestway Drive, Ste. 105
                                          San Antonio, TX 78239
                                          *Pro Hac Vice Motion Forthcoming*

                                          Nikhel Sus*
                                          Citizens for Responsibility and
                                          Ethics in Washington
                                          1331 F St. NW, Ste. 900
                                          Washington, DC 20004
                                          *Pro Hac Vice Motion Forthcoming*