# Exhibit A

  
  

June 24, 2022

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Via: DHS FOIA Public Access Portal (foiarequest.dhs.gov)

Re:     Request Under 5 U.S.C. § 552(a)(2) to Make Bond Payment
        Procedures Available for Public Inspection

Dear FOIA Officer:

      This letter constitutes a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA) submitted on behalf of the American Immigration Council (the "Council"), Beyond Bond & Legal Defense Fund, the Community Justice Exchange - National Bail Fund Network ("NBFN"), the Fair Fight Bond Fund, the Kent Immigration Bond for Our Neighbors Defense, NorCal Resist, Prairielands Freedom Fund, the Refugee and Immigrant Center for Education and Legal Services ("RAICES"), and the Vermont Freedom Fund (collectively referenced herein as "Requesters"). Requesters request that U.S. Immigration and Customs Enforcement ("ICE" or the "Agency") publish information regarding ICE policies and procedures for paying bond by noncitizens, their representatives or family and fellow community members in a manner accessible to the public. Requesters also ask that ICE make all policies and procedures available in an electronic format in its online reading room, now and in the future, pursuant to the Freedom of Information Act ("FOIA"), § 552(a)(2), which requires agencies to make certain information available for public inspection.

      Requesters ask that ICE proactively publish staff manuals, instructions to staff, memoranda, or other statements of policy and interpretation issued by ICE regarding how members of the public can pay immigration bonds to secure the release of individuals in ICE custody and policies and procedures governing the release of individuals from ICE custody, including but not limited to:

1. *Posting* of Bond and Release Procedures:
   a. Hours of operation during which ICE field offices accept bond payments;
   b. Acceptable forms of bond payments;
   c. Any additional requirements, policies or procedures for the release of an individual from ICE custody upon the payment of bond.

2. Information about how an individual who is bond eligible may challenge 1) the agency's determination to revoke a bond or 2) a determination that the conditions of release under bond have been breached.

3. Policies and procedures used by ICE officers in deciding whether to reject, cancel or revoke a bond determination.

4. Information about how a bond obligor may challenge the agency's rejection of a bond payment or the agency's claim that conditions of release on bond have been breached.

5. The process and conditions by which obligors can obtain refunds of paid bonds.

To the extent that an ICE Field Office has issued localized instructions to staff, memoranda, or other statements of policies and procedures regarding the information requested above, Requesters ask that ICE proactively disclose these records with respect to each Field Office.

ICE is required to make its policies and procedures regarding payment of bond available for public inspection in electronic format. 5 U.S.C. § 552(a)(2). The policies and procedures regarding payment of bond described herein include statements of policy and interpretations adopted by the agency and not published in the Federal Register. 5 U.S.C. § 552(a)(2)(B). In addition, some requested documents are staff manuals and instructions to staff that affect a member of the public. 5 U.S.C. § 552(a)(2)(C). In fact, ICE previously made some of this information available on its website.[1]

The information that Requesters seek to be made available in an electronic reading room falls squarely within the parameters and intent of the proactive disclosure requirements of FOIA. 5 U.S.C. § 552(a)(2). The basic purpose behind the requirement to make this operational information available proactively is "to afford the private citizen the essential information to enable him to deal effectively and knowledgably with the Federal agencies."[2] Recently, Attorney

---

[1] Memorandum from John Torres to Assistant Directors, Deputy Assistant Directors, Field Office Directors and Deputy Field Office Directors, Bond Posting Hours and Release Policies and Procedures (Dec. 18, 2006), *available at* https://www.ice.gov/doclib/foia/dro_policy_memos/bondpostinghoursandreleasepoliciesandprocedures12182006.pdf. (This 2006 memorandum provides certain information about how members of the public may pay a bond, but Requesters cannot verify this memorandum reflects current policy.)

[2] Office of Information Policy, U.S. Dep't of Justice, Proactive Disclosure of Non-Exempt Agency Information: Making Information Available Without the Need to File a FOIA Request (Dec. 17, 2021), *https*://www.justice.gov/oip/oip-guidance/proactive_disclosure_of_non_exempt_information.

General Merrick Garland emphasized that the proactive disclosure of information is fundamental to the faithful application of the FOIA and encouraged proactive agency disclosures.[3] Further, courts state that documents subject to 5 U.S.C. § 552(a)(2) must be "automatically available for public inspection." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 756 (D.C. Cir. 1978).

The procedural documents requested provide basic information for how detained individuals, or their family members, friends or members of their communities who live in the United States may pay their bonds at ICE offices. This is the type of interaction between private citizens and federal agencies that requires the agency to provide information so that those who seek the release of detained individuals can efficiently and correctly follow the procedures to secure individuals' release. And, because FOIA requires the policies and procedures regarding payment of bond to be available in ICE's online electronic reading room, no fees can be charged for processing this request.

Alternatively, if ICE finds that a fee is applicable to the proactive disclosure of the requested records under 5 U.S.C. § 552(a)(2), Requesters seek a waiver of such fee. Requesters seek a fee waiver because the information they seek is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the [requesters]…." 5 U.S.C. § 552(a)(4)(A)(iii). Congress intended FOIA to be construed liberally in favor of granting waivers for noncommercial requesters like Requesters. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citations omitted)).

   a. *The public interest element is satisfied by the Request.*

The public interest criteria is satisfied when (1) the request concerns operations or activities of the government; (2) disclosure is likely to contribute to an understanding of government operations or activities; (3) disclosure contributes to an understanding of the subject by the public at large; and (4) disclosure is likely to contribute significantly to such understanding.[4]

First, the Request pertains to "operations or activities of the federal government," as ICE is a federal entity. 6 C.F.R. § 5.11(k)(2)(i). The duty to collect immigration bonds has been designated to ICE, and ICE's bond policies impact thousands of individuals every year. ICE detains an average of 350,000 immigrants each year, and both immigration judges and ICE

---

[3] Press Release, U.S. Dep't of Justice, Attorney General Merrick B. Garland Issues New FOIA Guidelines to Favor Disclosure and Transparency (March 15, 2022) *available at* https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-issues-new-foia-guidelines-favor-disclosure-and.
[4] 6 C.F.R. § 5.11(k)(2) (2017) (DHS regulations outlining criteria for responses to requests for fee waivers under FOIA); *see also Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004) (citing 28 C.F.R. § 16.11(k)(2)).

granted bonds to a percentage of those detained.[5] The collection of bonds is thus undoubtedly a government activity.

Second, the Request is "likely to contribute" to "an increased public understanding of" the government's operations or activities, *id*. § 5.11(k)(2)(ii), by helping the public understand ICE's procedures as they relate to bonds; specifically, how members of the public may post bond payments to secure the release of family members and friends. ICE frequently rejects or revokes bonds previously issued to an individual due to a finding of a breach of bond. Publicly available information about bond procedures will help individuals, their representatives, and obligors understand the criteria for bond cancellations and why refunds are delayed even after an individual complies with the bond terms.

Though Requesters attempt to communicate information about bond payment procedures to assist their constituents properly secure the release of individuals in ICE custody, their efforts often are stymied by changes in procedures and inconsistent practices across different Field Offices. For example, Requester Prairieland Freedom Fund offers information to the public on how to pay bonds on behalf of detained individuals and created an intake form with information to help prioritize cases. ICE publication of bond payment procedures will assist Prairieland Freedom Fund provide timely and accurate information to the public. Fair Fight Bond Fund, working under the umbrella of the Washington Immigrant Solidarity Network, hosts a hotline for community members looking for information about community resources, including assistance in paying immigration bonds. The Vermont Freedom Fund provides resources for community bail funds that free people in detention by paying immigration bonds. Beyond Bond & Legal Defense Fund provides information to the public about bonds on its website. Likewise, the Council published a factsheet in 2019 about how individuals in ICE detention may seek release, including information on bond procedures.

Accordingly, the information sought by this Request will allow Requesters to help the public better understand the government's operations or activities.

Third, disclosure of the requested records will contribute to "the understanding of a reasonably broad audience of persons interested in the subject," 6 C.F.R. § 5.11(k)(2)(iii), because Requesters seek to make public documents that affect how members of the public can pay bonds on behalf of individuals in ICE custody. The records will also help inform the public about the agency's overall bond payment policy—information that will help ensure that bond-eligible individuals avoid unnecessary extended detention. Requesters maintain that ICE must make these documents available electronically in its FOIA library. Additionally, Requesters will disseminate the information made public by ICE to a broad audience. For example, Requester RAICES, with one of the largest bond funds in the country, has a significant social media

---

[5] Immigrant Rights Clinic at Stanford Law School and Immigration Law Clinic at UC Davis School of Law, Following the Money, 2, Feb. 25, 2019, *available at* https://www.dropbox.com/s/kfprxnn2o6uj368/19-02-25%20Bond%20FOIA%20Report_Final.pdf?dl=0 (stating that ICE detains an average of 350,000 immigrants each year, and 30 to 42 percent of those individuals are granted bond by an immigration judge while others are granted bond by ICE) (hereinafter "Immigration Clinic Report").

4

presence with 191,500 Twitter followers and 142,000 followers on Instagram. RAICES also generates approximately 45,580 unique webpage views per month. Further, Requester NBFN provides guides and training materials to coordinate immigration bond funds throughout several states. The Council also disseminates information to its followers through its publications, website, and social media. In 2021, the Council's website had 2,613,267 pageviews from 1,580,956 visitors. Requesters have robust networks, both nationally and in their respective states, ensuring that the documents published by ICE will be amplified by Requesters, which will contribute to a broad audience's understanding of the bond system.

Finally, disclosure will enhance the public's understanding of the subject of the Request "to a significant extent." 6 C.F.R. § 5.11(k)(2)(iv). Although there has been media and public interest in this issue, much remains unknown about bond payment procedures. For example, ICE had $204,754,410.66 in the U.S. Dept. of Homeland Security's unclaimed bond account as a result of the agency's cumbersome and obscure process to reclaim bond funds—both when an individual meets the bond conditions or ICE cancels the individual's bond.[6] The problems encountered by the public with the payment of bonds to ICE garnered the attention of several members of Congress.[7] Due to Requesters' work in their local communities, disclosure of the information will help Requesters pass significant knowledge to community members involved with their funds. As previously mentioned, all Requesters provide information to the public, either through their networks or by speaking directly with impacted individuals, about ICE's bond procedures. Requesters and members of the public deserve access to these records to fill in the information gap created by ICE's lack of transparency on these processes, even though the agency maintains significant decision-making authority when it comes to bond payments, refunds, cancellation, revocation, as well as the prompt release of individuals in its custody.

    b. *The request is not in the commercial interest of Requesters.*

The request is not in the commercial interest of Requesters. The request seeks that the agency publish the records at issue on its website free of charge to the public because the records are subject to the proactive disclosure provisions of the FOIA. If in fact the agency publishes the requested records on its own website, no commercial gain will be had by Requesters.

Furthermore, Requesters are non-profit organizations serving their communities and providing information free of charge to their members and supporters. For example, RAICES is a 501(c)(3) organization that provides *pro bono* assistance on a holistic level to individuals, families, and unaccompanied children. The NBFN is associated with Tides, which is a 501(c)(3) organization. The NBFN shares information relating to immigration bonds with all of the state funds that make up the network free of charge. Further, localized Requesters like NorCalResist, Prairieland Freedom Fund, Vermont Freedom Fund, Inc., Beyond Bond & Legal Defense Fund

---

[6] Immigration Clinic Report, *supra* Note 4, at 5.
[7] Press Release, AOC, New York delegates protest immigration court proceedings in letter to DOJ (April 17, 2020), *available at* https://meng.house.gov/media-center/in-the-news/aoc-new-york-delegates-protest-immigration-court-proceedings-in-letter-to.

are all 501(c)(3) non-profit organizations created to provide free services to individuals in detention.

Because the request seeks that ICE proactively disclose the records in question on its website and Requesters are committed to the dissemination of information to the public free of charge, the request is not in their commercial interest.

Thus, ICE should not charge any fees for this request because Requesters seek disclosure of these documents pursuant to 5 U.S.C. § 552(a)(2). However, if the agency determines that a fee is applicable to this type of request, Requesters meet the criteria for a fee waiver.

As required by the FOIA, please provide a response to this request within twenty working days. If you have any questions, please contact Yvette Y. Changuin, RAICES's Litigation Staff Attorney via email at yvette.changuin@raicestexas.org or by phone at (210) 526-0042.

Very truly yours,


Yvette Y. Changuin,
Litigation Staff Attorney
On behalf of the Requesters